## Schafenacker v. Green, County Controller

*James R. Caiola*, for plaintiff.

*Robert Trucksess*, for defendant.

KNIGHT, P. J., November 15, 1954.—Plaintiff, a duly licensed physician, practicing in the Borough of North Wales, this county, presented through his attorney, a bill for $5 for the examination of a person to ascertain if, in the opinion of the physician, said person was under the influence of intoxicating liquor. The person was brought to plaintiff by a police officer employed by the Borough of North Wales. The physician examined the person and gave as his opinion that he was not under the influence of liquor, whereupon the police officer allowed said person to proceed on his way and nothing further was done in the matter.

Plaintiff presented his bill for the examination to the Borough of North Wales and payment was refused; he presented the bill to the Controller of Montgomery County and payment was likewise refused, then this complaint in mandamus was filed. The controller filed an answer as no questions of fact are involved, counsel have agreed upon a stipulation of the facts and the matter came before the court en banc on a case stated.

We believe everyone agrees that the physician should be paid for his services and that the bill rendered is not excessive; the only question is, who should pay the bill, the police officer, the Borough of North Wales, or the county? To put the question more exactly, has the county any authority under the law to pay this bill from public funds?

Some background of the issue may be helpful. The writer has been on the bench nearly 30 years and is familiar with certain facts which indeed are a matter of common knowledge. The practice of taking the drivers of motor vehicles suspected of driving under the influence of liquor to be examined by a

physician was introduced into Montgomery County by the State Police approximately 20 years ago and has now become almost a standard and established practice among the law enforcement officers of the Commonwealth and county. There is nothing in the law which requires an officer to take a driver suspected of being under the influence of liquor before a physician for examination, nor do we know of any statute or decisional law which declares that the evidence of the physician is the best evidence in such cases.

The first question arose in reference to the compensation of physicians in so-called drunken driving cases when they appeared as witnesses in court. The physician in these cases is not technically an expert witness for he testifies to facts and conditions which he personally observed before the alleged drunken driver was arrested. In the beginning the physician witness was paid only the ordinary and usual witness fee. Quite naturally the physicians rebelled and the matter was settled in this county by a sort of mutual agreement to pay the physicians a witness fee of $15 when they testified in court in drunken driver cases. It is interesting to note that this fee is paid through the office of the district attorney out of a fund given him for the purpose of investigating crime in the county.

Section 620 (f) of The Vehicle Code May 1, of 1929, P. L. 905, and its amendments and supplements makes the driving of a motor vehicle under the influence of liquor a misdemeanor and in section 1207 of the act we find this:

". . . That all fines and penalties collected and all bail forefeited for the violation of the provisions of sub-section "f" of Section 620, shall be paid to the Treasurer of the County wherein the violation occurred, to be used by said County for the payment of physicians fees for the examination of persons

accused of violating the provisions of the said section. . . ."

"Any balance remaining in the Treasury of the County at the expiration of the current year, and not payable for physicians services rendered, shall be used for County highway purposes."

The issue in this case revolves about the meaning intended by the legislature to be given to the word "accused" as used in the quoted portion of the act. Defendant contends that "accused" as used in the act should be given a technical and formal meaning and applies only to a person formally charged with a crime by information. Plaintiff contends that the intent of the legislature was to give the word a broader meaning to include any examination made to determine whether a person is under the influence of liquor.

We might dispose of the case at this point by calling attention to the fact that there is no evidence that the police officer involved *accused* the person he took before plaintiff with being under the influence of liquor, the stipulation only says the officer *suspected* said person as being under the influence. There is a difference between suspecting and accusing a person of the commission of a crime.

It may also be pointed out that the controller has some discretion in the payment of claims against the county. It is his duty to investigate claims to ascertain if the claims are just and the goods delivered or services rendered. In the present case there is no supporting evidence that the service was rendered by plaintiff; he simply presented his bill. We have no disposition, however, to dodge the issue before us.

What the legislature did and intended to do by that portion of section 1207, above quoted, was to transfer the fines and forfeitures collected in drunken driving cases from the Commonwealth to the county

and the reference to examinations by physicians was not so much to decree that the physicians should be paid as to designate the fund from which they should be paid. The legislature must have known and taken into consideration the practice of having operators of motor vehicles suspected of driving under the influence examined by a physician; otherwise they would not have put the provision for the payment of physicians' fees in section 1207.

The Statutory Construction Act of May 28, 1937, P. L. 1019, art. III, sec. 33, declares:

"Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this act, shall be construed according to such peculiar and appropriate meaning or definition."

The persons to be examined under section 1207 of the Act of 1929, above quoted, are persons accused of violating section 620 (f) of the act and a violation of section 620 (f) is a crime. From time immemorial in Anglo-Saxon jurisprudence the well-recognized and long-established method of accusing a person of a crime is by information or indictment. Counsel for defendant in his brief has cited many examples wherein the words "accuse", "accused", or "accusation" have been used in Constitutions, in decided cases in other jurisdictions, and by textbook writers, and in every instance the words have been used in connection with a formal charge of crime. We quote two instances from the brief:

"Let us look at Corpus Juris. In 22 (2d) sec. 303, page 457, it says,

" 'In law the word "accusation" has been defined as a charge in due form of law before an officer or tribunal competent to proceed toward punishment of

the offense. Accusation includes indictment, information, presentment or warrant which may legally be employed to charge a crime or offense'.

"In State v. Lloyds, 177 So. 582 it was held:

"'An accused is one who is proceeded against by some method such as a complaint to a Magistrate, a warrant legally issued, an indictment, or an information'."

Words having a precise and well-settled legal meaning must be interpreted in the same sense in statutes unless a contrary meaning is plainly intended: Appeal of Ryder, 365 Pa. 149 (1950); Commonwealth v. Hicks, 365 Pa. 153 (1950).

We are of the opinion that the word "accused" has a well-defined legal meaning as applying to one formally charged with a crime. We are therefore of the opinion that the legislature used the word "accused" in section 1207 of the Act of 1929 in its more restricted, technical and legal sense and since the person examined by plaintiff had not been formally charged with a violation of section 620(f), plaintiff cannot succeed in this action.

This does not mean that plaintiff cannot be paid for his services unless he finds the person he examines to be under the influence of liquor and that person is formally charged with the offense. Such a holding would not be fair to the physician or the person examined. It does not advance the cause of justice when the compensation of a person making a decision of this kind depends upon the decision he makes.

The Act of June 29, 1923, P. L. 973, provides:

"All necessary expenses incurred by the district attorneys of any county of this Commonwealth or his assistants, or any officer directed by him, in the investigation of crime and the apprehension and prosecution of persons charged with or suspected of the

commission of crime shall be paid by the respective counties, out of moneys in the County Treasury, upon the approval of the bill of expense by the district attorney and the Court of their respective counties."

Whether a person is under the influence of liquor is largely a matter of opinion as many verdicts in our criminal court will demonstrate. When a police officer takes an operator of a motor vehicle whom he suspects to be under the influence of liquor to be examined by a physician, it is more of an investigation than an accusation; the officer wants the opinion of the medical man before he makes a formal accusation. We are of the opinion that the district attorney could approve for payment the bill of a physician who, after examination, finds an operator not to be under the influence of liquor. It comes within the scope of his authority to investigate crime.

Of course, in the end the county will pay the bill, but this is as it should be, for the county collects a large amount (in 1953 it was $36,656.14) from fines and forfeitures imposed for violations of section 620($f$) and can well afford to pay a moderate fee charged by physicians for making these examinations.

The district attorney is also in a position to protect the county from any abuse of the right to be paid for examinations in which the physician finds the examined person not to be under the influence of liquor.

We note that some of our police departments have discontinued the practice of taking operators of motor vehicles, suspected of driving while under the influence of liquor, to be examined by a physician. The practice has its good features, but it also has it bad features. It substitutes the physician for the jury, for few police officers would charge an operator with a violation of section 620($f$) after a physician had given his opinion

that the operator was not under the influence of liquor. We also suspect that some, if not many, physicians interpret the term, "under the influence of liquor" to mean ability to drive a motor vehicle. That this is more than mere suspicion on our part is shown by a bill submitted by a physician of our county (not plaintiff) which was exhibited to us at the argument, on which appears this amazing statement in the physician's handwriting: "Examination for intoxication (under influence of alcohol but still able to drive)".

The statutory offense of operating a motor vehicle while under the influence of liquor is complete when the thing prohibited by the statute has been done, whether with or without inconvenience or annoyance to the public.

It is not essential to the existence of the statutory offense that the operator of a motor vehicle should be so intoxicated that he cannot drive a car.

The expression "under the influence of intoxicating liquor" covers not only all the well-known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors and which tends to deprive him of that clearness of intellect and control of himself which he would otherwise possess.

So, one operating a motor vehicle while under the influence of intoxicating liquor offends against the criminal law even though he operated so slowly and so skillfully and carefully that the public is not annoyed or endangered.

We do not wish to further extend the already long opinion by discussing the liability of the Borough of North Wales to pay the bill; suffice it to say we are of the opinion that the borough is not liable.

And now, November 15, 1954, judgment is entered for defendant.